IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

GLORIA GARCÍA-VÁZQUEZ, et. al.      *
                                    *
         Plaintiffs                 *
                                    *   Civil No. 97-1313(SEC)
             v.                     *
                                    *
FRITO LAY SNACKS CARIBBEAN,         *
INC., et. al.                       *
                                    *
         Defendants                 *
****************************************

## OPINION AND ORDER

Pending before the Court is defendant Frito Lay Snacks Caribbean, Inc.'s Motion for Summary Judgment, **(Docket #65)**, and plaintiff Gloria García-Vázquez's opposition, **(Docket #89)**.[1] For the reasons stated below, defendant's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART.**

I.     **Factual Background**

Plaintiff Gloria García-Vázquez (hereinafter "Gloria García") filed a complaint on March 6, 1997, for injunctive, compensatory relief, and punitive damages resulting from defendant corporation Frito Lay Snacks Caribbean, Inc.'s (hereinafter "Frito Lay") alleged discrimination, hostile working environment, harassment, failure to provide reasonable accommodation, and the otherwise unlawful termination of Plaintiff Gloria García from her job. This Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. §§ 1331 and 1343, since the cause of action arises under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et. seq.; the American with Disabilities Act (ADA); and the Equal Pay Act (EPA), 29 U.S.C. § 206(d)(1).

---

[1] Also considered by the Court for purposes of this Opinion and Order was defendants' reply brief. **(Docket #101).**

**Civil No. 97-1313(SEC)**                                                                                           2

Defendant Frito Lay is a corporation authorized to do business in Puerto Rico, and is a Division of PepsiCo Puerto Rico, Inc., also a corporation authorized to do business in Puerto Rico. Plaintiff Gloria García was an employee of Frito Lay from August 24, 1988 until June 28, 1996, when she did not return to work after being on medical leave of absence.

On July 30, 1999, Frito Lay filed a motion for summary judgment in the case at bar alleging that Ms. García failed to produce facts sufficient to support a finding of discrimination by a jury. (Docket #65). Frito Lay cites caselaw indicative of the high standards that must be satisfied in order to establish a *prima facie* case of constructive discharge. Frito Lay alleges that Plaintiff's case does not meet those standards because the allegedly uncontroverted facts do not support a finding that "[the] working conditions were so intolerable 'that a reasonable person in the employee's shoes would have felt compelled to resign." (Docket #65, Defendant's Motion for Summary Judgment, at p. 13, citing Rodriguez v. Loctite Puerto Rico, Inc., 967 F.Supp. 653, 666 (D.P.R. 1997).)

In addition, Frito Lay alleges that Plaintiff cannot establish an ADA claim because: (1) Plaintiff does not have a "disability" within the meaning of ADA; (2) Plaintiff neither requested, nor was denied a "reasonable accommodation"; and (3) Plaintiff was not a "qualified individual" under ADA. Furthermore, Frito Lay alleges that Plaintiff's discrimination claims are not actionable because Plaintiff has "suffered no adverse employment actions." (Defendant's Motion for Summary Judgment, Docket #65 at p.27).

Plaintiff has opposed Defendant's motion for summary judgment alleging that: (1) there is a controversy of facts that precludes summary judgment; and in addition (2) Plaintiff's evidence establishes a *prima facie* case of unlawful discrimination that enables it to survive summary judgment.

AO 72A
(Rev. 8/82)

**Civil No. 97-1313(SEC)**                                                                                                    3

## II. Summary Judgment Standard

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim... is asserted... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that **there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law**." Fed.R.Civ.P. 56(c); See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248(1986); NASCO, Inc. v. Public Storage, Inc., 29 F.3d 28 (1st Cir. 1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2725, p.401.

In this regard, the First Circuit Court of Appeals has noted that **for a dispute to be "genuine", there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party.** U.S. v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992); See also Boston Athletic Assn. v. Sullivan, 867 F.2d 22, 24 (1st Cir. 1989); Medina Muñoz v. R.J. Reynolds Tobacco, 896 F.2d 5, 8 (1st Cir. 1990) ("A 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

By like token, **"material" means that the fact is one that might affect the outcome of the suit under the governing law**. Morris v. Government Development Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, supra, § 2725 at p. 419. "**Not every genuine**

Civil No. 97-1313(SEC)                                                                                                    4

**factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared.**" Martínez v. Colón, 54 F.3d 980, 983-984 (1st Cir. 1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. Casas Office Machines, Inc. v. Mita Copystar America, Inc., 42 F.3d 668 (1st Cir. 1994). Summary judgment "admits of no room for credibility determinations, not room for the measured weighing of conflicting evidence such as the trial process entails." Id. (citing Greensburg v. Puerto Rico Maritime Shipping Authority, 835 F.2d 932, 936 (1st Cir. 1987). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. Casas Office Machines, 42 F.3d at 684.

**While the moving party has the burden of initially establishing that there is "an absence of evidence to support the nonmoving party's case**", Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1984); **the nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions.**" Lawton v. State Mutual Life Assurance Company of America, 101 F.3d 218, 223 (1st Cir. 1996). Furthermore, "the nonmovant must produce specific facts, in suitable evidentiary form' sufficient to limn a trialworthy issue... Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); Medina Muñoz, 896 F.2d at 8, quoting Mack v. Great Atlantic and Pacific Tea Co., 871 F.2d 179, 181 (1st Cir. 1989) ("The evidence illustrating the factual controversy cannot be conjectural or

Civil No. 97-1313(SEC)                                                                                              5

problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.")

The uncontroverted facts before the Court show that Plaintiff Gloria García was an employee of Frito Lay from August 24, 1989 until June 28, 1996. She started as a financial analyst and from February 1989 to April 17, 1990, she worked as an Acting Planning Manager. On June 1991, Plaintiff was diagnosed with various gynecological-genital conditions.[2] One of these conditions required chemotherapy. In addition, plaintiff also suffered physical and emotional side effects as a result of the extremely abrasive drugs used for her medical treatment and as a result of various major surgeries. (See Docket # 89, Plaintiff's Exhibit # 9, Dr. Jesús Rodríguez-Arroyo's Deposition). It is uncontroverted that due to Plaintiff's need for medical treatment, Frito Lay agreed to arrange Plaintiff's working schedule to allow her one day off each working week. This arrangement lasted approximately six months, from February, 1992 to August, 1992. Thereafter, from August, 1992 to August, 1995, Plaintiff worked nine out of ten working days every two week period.

On March 1, 1993, Plaintiff was transferred to the Human Resources Department as "Senior Compensation Analyst." In October of that year, Ms. García was evaluated for the first time as a Senior Compensation Analyst, and obtained a very positive mark. Thereafter, in February, 1994, Ms. García was promoted to the position of "Compensation and Benefits Manager"; a position that she held until her alleged constructive discharge. At various points during her tenure at Frito Lay, after

---

[2] A list of Ms. García's gynecological-genital conditions as provided by Plaintiff is: (1) HPV or Human Papilloma Virus in the cervix and the bowel and Dysuria Vestibulatis; (2) Condolymotive Vulva and Subcundula Vulva Condyloma; (3) Vulva Biopsy Positive; (4) Ulceration in Vulva; (5) Increase in SPY cleaves; (6) Severe irritation of external genitalia; (7) Somarisis in the urine; (8) Severe inflammation in vulva; (9) Ediopathic Vestibulatis or Volvodinia; (10) Vaginal infection inflammation; (11) Espsonvirovirus and Citomegalovirus; (12) Reappearing lesions in vagina; (13) Bacterial Vaginosis; (14) Severe Dismenoria; (15) Severe endometriosis and extensive adhesions in pelvic area; (16) Foliculitis; (17) Paralytic elius (hematoma in wound).

**Civil No. 97-1313(SEC)**                                                                 6

she was diagnosed with Condyloma and HPV (Human Papilloma Virus), Ms. García was hospitalized to receive medical treatment. Specifically, in November, 1994 Ms García was hospitalized and underwent major exploratory surgery, and on March 7, 1996 she was again hospitalized for a total abdominal hsyterectomy and bilateral salpingoophorectomy, with extensive enterolysis and adhesiolysis. After this surgery, Ms. García never returned to work.

Plaintiff Gloria García alleges that a pattern of discrimination from Frito Lay personnel and management developed since she requested a reasonable accommodation to receive medical treatment back in 1992. This pattern of discrimination allegedly worsened when Mr. José Luis Prado became President of Frito Lay in December, 1994. She alleges that Mr. Prado displayed a very negative attitude towards her from the beginning and that by June 14, 1994, he had requested plaintiff's immediate supervisor, Mr. Víctor Rivera, to find a way to dismiss her. Thereafter, Ms. García received a proposal for a settlement and discharge agreement from Mr. Víctor Rivera, Director of Human Resources. She was forced to take an early Christmas vacation in order to allow the negotiations for her discharge to develop. In addition, Defendants publicized that Ms. García had been dismissed, and announced through the newspaper that her position was vacant. Mr. Prado even interviewed job applicants for Ms. García's position, while she was still employed. However, Ms. García rejected the discharge proposal and returned to work after her Christmas vacation. Thereafter she allegedly was deprived of most of her job duties.

On March 7, 1996, Ms. García took a leave of absence to undergo an extensive and delicate surgical procedure. Up until May 6, 1996, Ms. García's treating physician, Dr. Jesús Rodríguez-Arroyo, had not released her to return to work. Plaintiff's physician estimated that she would need an additional 6 to 8 weeks of recovery after that date before she would be in a condition to return to

**Civil No. 97-1313(SEC)** 7

work. (Docket # 89, Plaintiff's Exhibit # 20, Letter by Dr. Jesús Rodríguez-Arroyo to Frito Lay). Plaintiff alleges that during this time, while she was still recovering from surgery, Mr. Noriega of Frito Lay called her at home to ask her to complete a compensation survey that had a deadline and when she replied that she could not come back to work due to surgery complications, he asked Ms. García to pick up her belongings. At that time, she found out that her office was closed, the locks were changed, and her things removed and packed away. (Docket 89, Plaintiff's Exhibit # 1, Vol.III, Gloria García's Deposition at p. 36-38). After this, Ms. García picked up her belongings and notified Frito Lay through her attorney that she would not return to work after what had happened and she claimed that she was constructively discharged. (Docket #65, Defendant's Exhibit Q). Even after this letter, allegedly in anticipation of this lawsuit, Frito Lay continued to pay Ms. García her salary, which she returned. On March 6, 1997, Ms. García filed the present action alleging that she was constructively discharged.

### III.   Employment Discrimination Applicable Law

Plaintiff bears the initial burden of proof to establish a *prima facie* case of unlawful discrimination in the work environment. McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802 (1973). The United States Supreme Court in McDonnell Douglas, supra, established that plaintiffs may use circumstantial evidence to prove the existence of a discriminatory animus from an employer, provided that a *prima facie* case of discrimination is first established. McDonnell Douglas Corp., 411 U.S. 802-803; Serrano-Cruz v. DFI Puerto Rico, Inc., 109 F.3d 23, 25 (1st Cir. 1997). Once the prima *facie case* is proven, the burden of proof then changes to the employer to assert a non-discriminatory, valid reason for the allegedly discriminatory action. McDonnell Douglas Corp, 411 U.S. 802-803; Serrano-Cruz, 109 F.3d at 25 (Once plaintiff has carried its burden

**Civil No. 97-1313(SEC)**                                                                 8

of establishing a *prima facie* case "a presumption of discrimination arises that shifts the onus to the employer to come forward with a legitimate, non discriminatory reason for its actions.") Finally, if the employer provides such a legitimate non discriminatory reason for dismissing the employee, "the burden shifts back to the plaintiff to show that the employer's justification is pretextual." Serrano-Cruz, 109 F.3d at 25-26; St. Mary's Honor Center v. Hicks, 509 U.S. 502,, 515 (1993).

The elements of the McDonnell Douglas *prima facie* case require Plaintiff to show: (1) that she is a member of the protected class; (2) that she was qualified for the job; (3) that despite her qualifications, she was rejected/dismissed; and (3) that after this rejection/dismissal, the position remained open and the employer continued to seek applicants. McDonnell Douglas Corp, 411 U.S. at 803; John J. Coleman, III, Disability Discrimination in Employment § 6.2[1](1991) (In the context of an unlawful discharge, under McDonnell Douglas, a plaintiff may succeed if she establishes that she was qualified for the job, was fired, and was replaced by someone outside the protected class.) In regards to the requirement that the employee must have been fired, the First Circuit Court of Appeals has held that it includes both actual and constructive discharge. Herbert v. Mohawk Rubber Co., 872 F.2d 1104, 1110 (1st Cir. 1989); Serrano-Cruz, 109 F.3d at 25.

**A.   Whether Plaintiff Belongs to the Protected Class**

**1.   American with Disabilities Act**

The Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.A. §§ 12101, et. seq., is a federal law "intended to extend the basic duties and privileges of the Rehabilitation Act of 1973 to all except the smallest employers, to all state and local entities, and to most private sector establishments serving the public." Henry H. Perritt, Jr., Americans with Disabilities Act Handbook § 1.2 (3rd ed. 1997). Its Title I regulates the employment in general of disabled persons. It is, in the

**Civil No. 97-1313(SEC)**                                                                                     9

words of Henry H. Perritt, Jr.: "the most significant labor and employment legislation in a decade,"Id. § 1.1.

To prove that an employer violated Title I of ADA, the plaintiff must prove: "(1) That the plaintiff is a 'qualified individual;' (2) With a 'disability;' and (3) That the plaintiff was excluded from the position sought *because of the disability*" Id. § 3.2 (emphasis supplied); See 42 U.S.C.A. 12112(a); Quint v. A.E. Staley Manufacturing Co., 172 F.3d 1, n.3 (1st Cir. 1999) quoting Criado v. IBM Corp., 145 F.3d 437, 441 (1st Cir. 1998). "Qualified Individual with a Disability" is: "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.A. § 12111(8).

Under ADA, a "disability" is: "a physical or mental impairment that substantially limits one or more of the major life activities of [an] ... individual" 42 U.S.C.A. § 12102(2)(A). This conceptual definition has various elements. The first, "physical or mental impairment", has been defined to include: "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory..., cardiovascular, **reproductive**, digestive, **genito-urinary**, hemic and lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1). Clearly, Plaintiff's multiple illnesses qualify as a "physical or mental impairment" within this definition. However, that does not by itself amount to a "disability" under ADA.

Under ADA's concept of "disability", Plaintiff's physical or mental impairment must also "substantially limit a major life activity". 42 U.S.C. § 12102(2)(A). "'Major life activities' are those basic activities that the average person in the general population can perform with little or no difficulty". 29 C.F.R. App to Pt. 1630.2(i). Examples of recognized major life activities are:

**Civil No. 97-1313(SEC)**                                                                 10

"functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, working." 29 C.F.R. § 1630.2(i).

The issue then becomes whether Plaintiff's multiple physical impairments "substantially limit" a recognized "major life activity". In this regard, Plaintiff alleges that she is substantially limited in the major life activity of working, because she "was and still is substantially limited in working full time schedules, carrying, lifting, bending, sitting and standing for prolonged periods of time, and sleeping." (Docket # 89, Plaintiff's Opposition at p. 54).

In this regard, the First Circuit Court of Appeals has stated that: "An ADA claimant assumes a more fact-specific burden of proof in attempting to demonstrate that her impairment 'substantially limits' the major life activity of 'working'." Quint v. A.E. Staley Manufacturing Co., 172 F.3d 1, 11 (1st Cir. 1999).

The Equal Employment Opportunity Commission ("EEOC") has established that:

With respect to the major life activity of working--
(i) The term substantially limits means **significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.**

29 C.F.R. § 1630.2(j)(3).

To demonstrate that the claimant is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes" the following factors may be considered:

(A) The geographical area to which the individual has reasonable access;
(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of an impairment (class of jobs); and/or

**Civil No. 97-1313(SEC)** 11

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii).

Plaintiff alleges that she satisfies this test because the significant restrictions she faced, "working full time schedules, carrying, lifting, bending, sitting and standing for prolonged periods of time" translate across a broad range of jobs and are not job specific. Quint, 172 F.3d at 11.

In this case, viewing the facts in the light most favorable to the nonmovant as is customary with summary judgment motions, the Court finds that Plaintiff Gloria García has provided sufficient evidence to substantiate the multiple severe illnesses that she suffered during the last five to six years of her tenure at Frito Lay, as well as the limiting side-effects that these illnesses had upon her availability to work. In particular, Ms. García's medical conditions required regular treatment, visits to the doctor, rest and at times, surgery. Among the several symptoms that Plaintiff suffered were: "extreme burning sensation and excoriation of internal and external genitalia and urinary tract; somarisis in the urine; severe pain in menstrual periods; postmenopausal side effects; hot flashes; dizziness; weakness; likeness to chronic fatigue syndrome; general discomfort; general malaise; difficulty doing things during the day; fatigue; insomnia; depression; nausea; and severe migraines." (Docket 89, Plaintiff's Opposition at p. 57). Ms. García's multiple health conditions required that she have a flexible working schedule, in order to allow her to take time off regularly to receive medical treatment and rest. Just like in Quint, supra, Plaintiff's health conditions and their impact

Civil No. 97-1313(SEC)                                                                                                          12

on her availability to work constitute the kind of impairment that would substantially limit her ability to perform a broad range of jobs.

In addition, Plaintiff has provided evidence that she had a reasonable accommodation arrangement with Frito Lay to allow her to take time-off periodically to receive her required medical treatments.[3] In spite of her medical condition however, it is undisputed that Plaintiff was well qualified to perform her job. This fact is evidenced by Ms. García's personnel file at Frito Lay, which shows her superior evaluations and several promotions during the time she worked there. Therefore, the Court finds that Plaintiff has provided sufficient evidence to allow a reasonable factfinder to arrive at the conclusion that she was a qualified individual with a disability at the time she worked at Frito Lay and prior to her alleged dismissal.

### 2. Plaintiff's Age Discrimination in Employment and Equal Pay Act Claims

In regards to Plaintiff's allegations of sex, age or national origin discrimination, the Court notes that they are unsupported by substantive evidence. Mack v. Great Atlantic and Pacific Tea Co., 871 F.2d 179, 181 (1st Cir. 1989) ("The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve."); Medina-Muñoz, 896 F.2d at 8 (Indicating that "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.") In fact, Plaintiff makes very little effort to substantiate her arguments in her opposition to Defendants' motion for summary judgment with any admissible

---

[3] The term "reasonable accommodation" has been defined to include: "job restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modifications of equipment or devices; appropriate adjustments or modifications of examinations, training materials, or policies; etc." 42 U.S.C. § 12111(9).

Civil No. 97-1313(SEC)                                                                 13

evidence. To support her legal arguments, Plaintiff only makes reference to her allegations in the complaint. Therefore, summary judgment in regards to those claims is warranted.

### B.    Constructive Discharge

The crucial issue in this case however, revolves around the question of whether Plaintiff was constructively discharged or not, so as to satisfy the third prong of the <u>McDonnelll Douglas</u> *prima facie* case. This is so because if Plaintiff fails to provide sufficient proof to allow a reasonable fact finder to find that she was constructively discharged, all of her discrimination claims must be dismissed. Whether she was fired or not is a threshold issue. <u>Greenberg v. Union Camp. Corp.</u>, 48 F.3d 22, 27 (1st Cir. 1995) ("[Plaintiff's] termination claim fails at the outset... because he has not adduced sufficient evidence from which a jury could reasonably conclude that he was constructively discharged.") In this regard it has been stated:

> The federal courts have universally recognized that in some circumstances an employee's resignation may effectively be a termination where it is not the product of a free and voluntary choice. This doctrine, known as constructive discharge, has been uniformly applied to the various federal fair employment practice statutes. However, no single standard unites the courts. Rather, the facts held sufficient to find a constructive discharge have varied widely among the circuits and, not infrequently, within a given circuit.

2 Tobias, <u>Litigating Wrongful Discharge Claims</u> § 7:58, p.180. However, the First Circuit Court of Appeals has been consistent in requiring plaintiffs to satisfy the "objective standard"; meaning that: **"<u>the trier of fact</u> must be satisfied that the new working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."** <u>Serrano-Cruz</u>, 109 F.3d at 26; <u>Hebert</u>, 872 F.2d at 1113; citing <u>Calhoun v. Acme Cleveland Corp.</u>, 798 F.2d 559, 561 (1st Cir. 1986), <u>Alicea Rosado v. García Santiago</u>, 562 F.2d at 119 ("The

AO 72A
(Rev. 8/82)

Civil No. 97-1313(SEC) 14

burden imposed upon the employee must cause and be intended to cause, a change in his working conditions so difficult or unpleasant as to force him to resign.") Pursuant to the First Circuit Court of Appeals instructions, this determination represents a **question of fact for the jury**. Serrano-Cruz, 109 F.3d at 26. Therefore, "**[a]t the summary judgment stage of litigation, a court should ask itself whether the plaintiff could prevail if a jury or judge believed plaintiff's version of the facts and disbelieved defendant's version.**" Hebert, 872 F.2d at 1112; quoting Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 929 (1st Cir. 1983).

Limiting ourselves to this question then, we find that Plaintiff has adduced facts sufficient to support a finding by a jury that Frito Lay acted in a discriminatory manner by creating a work environment so hostile to Ms. García, that she felt compelled to resign. In arriving at this conclusion the Court notes that Plaintiff was offered a severance package at the request of Mr. Prado, Frito Lay's new President. There are company records that evidence Mr. Prado's intentions to discharge Plaintiff. There is testimony in the record, by way of depositions taken of Ms. Gloria García and her immediate supervisor Mr. Víctor Rivera, then Director of the Human Resources Department at Frito Lay, that show Mr. Prado's dislike of Plaintiff. In addition, there is evidence in the record that shows that such dislike was motivated by Ms. García's frequent medically-related absences from work. (Docket #89, Plaintiff's Exhibit #4, V.II, Deposition of Mr. Víctor Rivera on May 26, 1999, at p. 33). Furthermore, it is uncontroverted that the company announced Plaintiff's position as vacant in the newspapers and that the company actually interviewed and made job offers to other persons <u>while Plaintiff was still employed at Frito Lay</u>, and while she was still considering whether to sign the general settlement and release agreement that was offered to her. In addition, the record shows that Plaintiff was forced to take an early vacation in December, 1995, while Frito Lay's Senior

AO 72A
(Rev. 8/82)

**Civil No. 97-1313(SEC)**                                                                                                                     15

Management hoped that she would voluntarily resign. In addition, there is evidence on the record that shows that Mr. Prado falsely accused Ms. García of sending a fax to the United States Division of PepsiCo, regarding the unionization of Frito Lay's Puerto Rican sales workforce. Furthermore, there is evidence that Mr. José L. Prado changed Mr. Rivera's evaluation and superior recommendation for Plaintiff's work to a below target mark. Mr. Prado's evaluation would have been the first below target evaluation that Ms. García received since she started at Frito Lay in 1989. After Mr. Rivera advised Mr. Prado that his actions could be construed as retaliatory, Ms. García's evaluation was changed, and she was hastily sent an invitation to the awards celebration and a bonus check corresponding to the management incentive program. Finally, a significant part of Ms. García's job duties was taken away.[4]

In general, there is evidence on the record to show that the environment prior to Ms. García's departure for surgery on March 7, 1996 was hostile. There is additional uncontroverted evidence demonstrating that Frito Lay's senior management intended to dismiss her from work. The controversy arises over the motivation behind those efforts, and the Court believes that such a determination is one to be ascertained by the jury. The Court notes however, that there is evidence on the record that demonstrates that such efforts were motivated by discriminatory reasons. (See

---

[4] Although Plaintiff continued to do her job during this period, and she retained her title and salary, most of her job duties were taken away. As Compensation and Benefits Manager, Plaintiff was in charge of managing compensation and benefits for all the company's employees. However, after the arrival of Mr. José L. Prado, all the duties concerning compensation and benefits for the sales force were assigned to Mr. Enrique Niño, a Mexican national who came in to help on a special two weeks assignment related to the negotiations with the sales force union. Approximately seventy percent (70%) of Frito Lay's employees are in sales, therefore, Plaintiff's duties were substantially reduced. In addition, after Mr. Prado's arrival, Plaintiff did not receive any new cases and was only allowed to follow up on previously pending cases. The evidence presented by the parties shows that Mr. Niño is working for Frito Lay to this day. Frito Lay alleges that the company was readjusting and making structural changes to adjust to the sales force recent unionization, however this is a controversy of fact unsuitable to be decided by summary judgment.

Docket # 89, Plaintiff's Exhibit #4, V. II, Víctor Rivera's Deposition Transcript of May 26, 1999 at p. 33).

Accordingly, the Court finds that there is enough evidence in the record to allow a reasonable trier of fact to conclude that Ms. García was constructively discharged. In addition, Plaintiff has provided evidence to allow a reasonable fact finder to believe that the discrimination she endured was motivated by her disability. Therefore, defendant's motion for summary judgment **(Docket # 65) is DENIED** in regards to Plaintiff's claims of discrimination under ADA. However, the Court notes that plaintiff has failed to produce anything other than "steamy rhetoric and bare conclusions", Lawton v. State Mutual Life Assurance Company of America, 101 F.3d 218, 223 (1st Cir. 1996), in regards to her age, national origin, and sex discrimination claims. Accordingly, **Plaintiff's claims under ADEA and EPA are DISMISSED and Defendant's motion for summary judgment in regards to those claims is GRANTED.**

**SO ORDERED.**

In San Juan, Puerto Rico, this 21st day of March, 2000.

SALVADOR E. CASELLAS
United States District Judge