# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

GLORIA GARCIA, et. al.         \*

                     \*

    Plaintiffs         \*

                     \*    **Civil No. 97-1313(SEC)**

        v.           \*

                     \*

FRITO-LAY SNACKS CARIBBEAN,  \*
INC., et. al.               \*

                     \*

    Defendants        \*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*RECEIVED & FILED*
*01 DEC 28 PM 3:34*
*CLERK'S OFFICE*
*U.S. DISTRICT COURT*
*SAN JUAN, P.R.*

## OPINION AND ORDER

Pending before the Court is Defendant Frito Lay Snacks Caribbean, Inc.'s ("Frito Lay") "Motion Requesting the Dismissal of Plaintiff's Disability Claims and Memorandum of Law in Support Thereof," (**Docket # 143**). For the reasons stated below, Defendant's motion is **GRANTED**.

### I.  Background

On March 6, 1997, Gloria García-Vázquez ("Gloria García") and her husband filed the above-captioned case for injunctive, compensatory relief, and punitive damages resulting from Frito Lay's alleged discrimination, hostile working environment, harassment, failure to provide a reasonable accommodation, and the otherwise unlawful termination of Plaintiff Gloria García from her job (**Docket # 1**). Originally, Plaintiffs were seeking redress under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et. seq.; the Equal Pay Act (EPA), 29 U.S.C. § 206(d)(1); and the American with Disabilities Act (ADA), 42





U.S.C. §§ 12101 et. seq. However, on March 24, 2000 this Court issued an Opinion and

Order, upon a motion for summary judgment, whereby Plaintiffs' claims under the ADEA

and the EPA were dismissed with prejudice. See Docket ## 103-4. The Court sustained

Plaintiffs' ADA claim on grounds that there were material facts in dispute regarding two

crucial issues. First, the Court found that there was enough evidence in the record for a jury

to find that Gloria García was disabled under the ADA at the time of her termination. Docket

# 103 at 11). Second, the Court found that there was enough evidence in the record under

the applicable legal standard, to allow a reasonable fact finder to believe that Gloria García

was constructively discharged. Id. at 15-16. On February 20, 2001 Defendant's motion for

reconsideration from this ruling was summarily denied. Docket # 124.

After this ruling, the Court scheduled several settlement conferences, the last of which

was held on August 22, 2001. See Docket # 127; cont. sine die at Plaintiffs' request, Docket

# 130; and Docket ## 137, 139 & 142. During the conferences, Defendant requested that the

Court revisit the narrow issue of what constitutes "working" as a major life activity under the

ADA. In making their argument, Defendant noted that two cases had recently been decided

by the First Circuit Court of Appeals which concern precisely this issue. See Lebrón Torres

v. Whitehall Laboratories, 251 F.3d 236 (1st Cir. 2001) and Gelabert-Ladenheim v.

American Airlines, Inc., 252 F.3d 54 (1st Cir. 2001).

After considering Defendant's request, at the conclusion of the August 22, 2001

Settlement Conference, the Court ordered Defendant to file its motion and legal

memorandum by September 6, 2001. Plaintiffs' response was due on September 21, 2001.

Having received the parties' submissions, the Court will now decide, in light of <u>Lebrón</u> and

<u>Gelabert</u>, whether Plaintiff is substantially limited in the major life activity of "working" for

the purposes of the ADA.[1]

Defendant has proceeded pursuant to <u>Sutton</u> v. <u>United Airlines</u>, 527 U.S. 471, 483

(1999) (holding that "whether a person has a disability under the ADA is an individualized

inquiry") to discuss the undisputed facts of the case at bar, in comparison with the facts that

the Court of Appeals for the First Circuit faced in the <u>Lebrón</u> and <u>Gelabert</u> decisions.

Finding this approach appropriate, the Court adopts it for this Opinion and Order.

## II.  Statutory framework

The ADA provides that no employer covered by the ADA "shall discriminate against

a qualified individual with a disability because of the disability of such individual in regard

to" employment decisions. 42 U.S.C. § 12112(a). The statute defines "qualified individual

with a disability" as "an individual with a disability who, with or without reasonable

accommodation, can perform the essential functions of the employment position that such

individual holds or desires." 42 U.S.C. § 12111(8). <u>See also</u> <u>Sutton</u>, 527 U.S. at 477-478.

---

[1] The Court will consider this motion as one for summary judgment, since the Defendant has expressly complied with Local Rule 311.12 which requires the movant on a motion for summary judgment to file a separate statement of undisputed material facts on which its motion is grounded. Additionally, the Court notes that Defendant's motion has complied with the Court's parameters in that it is limited to the issues raised before the Court at the prior conferences.

To qualify as a "disabled" person pursuant to the ADA, a person must have an actual disability, have a record of a disability, or be regarded as having one. 42 U.S.C. § 12102(2). The ADA and the EEOC regulations provide that an individual is considered "disabled" for purposes of the ADA **only if** he/she has a physical or mental impairment that substantially limits one or more major life activities. Sutton, 527 U.S. at 478.

Under the EEOC regulations, a "physical impairment" includes "any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoeskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1). The EEOC also defines the term "substantially limits," and defines "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Id. at § 1630.2(i) and (j).

In Sutton, the Supreme Court clarified that "whether a person has a disability under the ADA is an individualized inquiry." 527 U.S. at 483. Also, "a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not substantially limit a major life activity." Id.

For a person to be considered limited in the major life activity of "working," the following criteria must be met.   First of all, the EEOC has established that:

With respect to the major life activity of working--

> (i) The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3). In order to demonstrate that the claimant is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes" the following factors may be considered:

> (A) The geographical area to which the individual has reasonable access;
>
> (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of an impairment (class of jobs); and/or
>
> (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii). Although proof from a vocational expert is not required for a plaintiff to satisfy this requirement, it is often helpful. See Gelabert, 252 F.3d at 60.

### III.  This Court's Prior Opinion

In the Opinion and Order of March 24, 2000 this Court ruled that Plaintiffs had satisfied their burden of proof for a *prima facie* case under the McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802 (1973) burden-shifting scheme on the issue of disability. Plaintiff alleged that she was substantially limited in the major life activity of working, because she "was and still is substantially limited in working full time schedules,

carrying, lifting, bending, sitting and standing for prolonged periods of time, and sleeping."

Docket # 89, Plaintiff's Opposition, at 54.[2]

In her opposition to Defendant's motion for summary judgment, Plaintiff alleged that

she satisfied the tests to be considered as substantially limited in the major life activity of

working because the significant restrictions she faced, "working full time schedules,

carrying, lifting, bending, sitting and standing for prolonged periods of time" translated

across a broad range of jobs and were not job specific. Id. at 54, citing Quint v. A.E. Staley

Manufacturing Co., 172 F.3d 1, 11 (1st Cir. 1999). At that time, the Court agreed with

Plaintiff, relying on the Quint case, where the First Circuit found that the plaintiff's carpal

tunnel syndrome "did more than merely disqualify her for a particular job at [the defendant

corporation]," but rather, the court found that: "[t]he inability to lift heavy objects and

perform repetitive manual tasks can translate across a broad spectrum of physically

demanding jobs." Quint, 172 F.3d at 11.

However, in Quint, the First Circuit specifically noted that "in the geographical area

where Quint resides, physically demanding jobs are an economic mainstay. In this vein,

Quint testified without contradiction that she had held a variety of jobs entailing manual

labor prior to her employment at Staley, ranging from potato harvesting in twelve-hour shifts,

to house cleaning and house painting." Id. at 12. The First Circuit added that plaintiff had

---

[2]    At that time the Court gave credibility to these statements for purposes of summary judgment, however, the Court notes that those statements were not accompanied by a reference to the record as required by Local Rule 311.12. See Docket # 89 at 54.

provided "corroborative expert testimony," and also, that "[she] adduced competent evidence that her training, knowledge, skills, a high school education and a work history of heavy physical labor likely would restrict her to such jobs, which were also the most prevalent in her geographical area." Id. Based on all of these factors, the First Circuit upheld the jury verdict below, finding that plaintiff's particular carpal tunnel syndrome precluded her from performing a broad range of physical jobs in Maine. Id. at 12-13.

The Court agrees with Defendant that the Quint factors were inadequately considered in our prior opinion. Moreover, the recent decisions of Lebrón and Gelabert, further define the First Circuit's stance of "working" as a major life activity, and necessitate a re-evaluation of the merits of this case.

## IV. The Recent First Circuit Case Law

### A. The Lebrón decision

In Lebrón, a case decided on summary judgment, the plaintiff alleged that the employer terminated her based on her disability, in violation of the ADA. Lebrón, who initially complained of back pain, was ultimately diagnosed with a cervico dorso lumbar strain. Following a two-month leave of absence, Lebrón returned to work, while continuing physical therapy. Lebrón was fired from her employment with Whitehall Laboratories on November 13, 1996 due to her "repeated violations of safety and quality protocols." Lebrón, 251 F.3d at 238. She filed suit, contending that the defendant employer had fired her because she was disabled by her back injury.

From the time of her return to work to her date of termination, Lebrón was receiving treatment for complaints of chronic neck and back pain that restricted mobility in her arms and back, preventing her from lifting her arms above her head without some pain and sitting or bending over long periods of time. Id. at 239.  She had received a diagnosis of a 20% impairment of her general physiological function from the Puerto Rico State Insurance Fund (SIF) due to her back condition. Id. at 238.

In evaluating Lebrón's ADA claim, the First Circuit used a three-prong analysis. First, it determined whether her back injury constituted a physical impairment.  Second, it evaluated whether "working" constituted a major life activity.  Then, after determining that Lebrón satisfied the first two prongs, the court considered whether Lebrón's impairment substantially limited her ability to work. Id. at 240-41.

Citing Sutton, the First Circuit noted that in order for plaintiff to demonstrate that she was substantially limited in her ability to work, Lebrón would have to show that her back injury precluded her from performing a substantial class of jobs or a broad range of jobs. Id. at 240.  The First Circuit found that she did not satisfy this burden because "[she] ha[d] not presented evidence sufficient to create a triable issue as to whether or not she is disabled within the meaning of the ADA." Id. at 241.  The court noted that: (1) "Lebrón presented evidence of an SIF finding of a twenty percent disability during her medical leave from Whitehall . . ."; and (2) "[s]he also presented medical records indicating on-going treatment

for physical limitations and pain at various times while she was employed by Whitehall." Id.

at 241-42.

However, the First Circuit ruled that this evidence, "while . . . suggestive of possible

disability," was "insufficient by itself to establish that she was substantially limited in the

performance of a class of jobs or a broad range of jobs in various classes." Id. at 242.  In

particular,  the court stated:

> It was Lebrón's responsibility as the party with the evidentiary burden to
> provide evidence tying her back condition into an inability to work at relevant
> jobs.  That she was injured and experienced back pain is not enough to meet
> that evidentiary burden where it remains speculation whether and to what
> degree her condition renders her unsuited to work at particular jobs which
> would, in aggregate, constitute a major life activity.

Id.

Furthermore, it is noteworthy that the court's examination of the evidence indicated

that not only was the evidence "completely lacking as to Lebrón's inability to perform a class

of jobs or broad range of jobs in various classes, but the evidence fail[ed] even to show that

Lebrón could not perform the specific job she held." Id. at 240.  For example, the Court

noted that Lebrón had performed her job without restriction for over a year after she returned

from medical leave, she had never told her employer that she could not perform her job, and

she did not otherwise demonstrate that her back condition actually prevented her from

performing her job. Id. The Court also found relevant the fact that since leaving Whitehall

Laboratories, Lebrón was working nearly full-time as a hair stylist, and caring for her

grandson. Id. Ultimately, the First Circuit affirmed the district court's grant of summary

judgment in favor of the employer.

## B. The Gelabert decision

Thirteen days after Lebrón, the First Circuit decided another ADA case. In Gelabert,

the plaintiff suffered from carpal tunnel syndrome (CTS), a debilitating and painful condition

that affects the hands and wrists and that can result from repetitive motion injury. Plaintiff

Gelabert was a woman with a B.S. degree in Mass Communication from Emerson College

in Boston, Massachusetts, and fully bilingual in English and Spanish. While working with

American Airlines, she developed CTS, which "deteriorated and now imposes a permanent

impairment of 20% on both hands." Gelabert, 252 F.3d at 56. As in Lebrón, the First Circuit

affirmed summary judgment for the employer on the grounds that Gelabert did not present

evidence that she was substantially limited in her ability to work.

In holding that Gelabert's ADA claim was properly dismissed, the court discussed at

length the appropriate analysis for determining whether the plaintiff's impairment

substantially limited her ability to work. It started by repeating the statement made in Quint

to the effect that "[w]hen the major life activity of working is at issue (as opposed to any

other major life activity), the plaintiff 'assumes a more fact-specific burden of proof.'"

Gelabert, 252 F.3d at 58 quoting Quint, 173 F.3d at 11. The court then used a "multi-level

analysis" consisting of two areas of focus. Id. at 59. First, the court focuses on the specific

characteristics and skills of the plaintiff, including her "education level, training, job skills,

expertise, and knowledge" and the plaintiff's employment history. Id. "If there is post-impairment work history, as here, that is also relevant." Id. The inquiry in fact was centered on what plaintiff's past and present work experience "tells . . . about her current skills and abilities in the workplace, as compared with the average person having comparable training, skills, and abilities." Id.

The second area of focus was on jobs and the relevant job market. In other words, a court should consider: the job the plaintiff held at the time of the impairment, the jobs considered "closed" to the plaintiff, and the available positions within a reasonable geographic area. Id. "The individualized characteristics of the plaintiff are the bedrock on which this jobs analysis must take place." Id.  Finally, following Sutton and Lebrón, the court assumed that a plaintiff must show a significant restriction as to either a class of jobs or a broad range of jobs in various classes. Id. at 60 citing Sutton, 527 U.S. 492.

In satisfying this last part of the inquiry (whether plaintiff is disqualified from a class of jobs or a broad range of jobs in various classes), plaintiff can use a vocational expert, although that is not required. Id. This is because, "[i]n some cases, it will be obvious that a particular impairment is so severe as to qualify as an ADA disability. . . . In other cases reference to publicly available labor market statistics, such as simple government statistics, may suffice." Id. at 60-61 (internal citations omitted).

Based on that legal framework, the court determined that "no reasonable jury could conclude that Gelabert was disabled." Id. at 61. Particularly relevant to the court's decision

was the fact that, based on her education and experience, Gelabert was qualified for a great variety of jobs within the relevant geographical area. Moreover, there was no evidence that her physical restrictions prevented her from performing any of those jobs. Id. at 62.

Given Gelabert's education and job history, and even with an impairment that prevents her from "lift[ing] more than thirty pounds, push[ing] or pull[ing] for more than twenty pounds, si[tting] or stand[ing] longer than eight hours, or typ[ing] more than one to two hours without a break," she did not demonstrate that she was significantly restricted in her ability to perform a class of jobs. Id. at 61. She even presented expert testimony from a clinical psychologist and a psychiatrist, to no avail. Id. at 62.

The First Circuit expressly noted: "[Plaintiff] relies heavily on Quint, supra, interpreting that case as holding that a restriction to light work is per se a substantial limitation on the major life activity of working. . . . In fact, Quint rejected a per se rule that CTS was or was not an ADA disability." Id. at 62. The First Circuit stated that to interpret Quint otherwise is "a misinterpretation and is contrary to the 'individualized inquiry' requirement." Id.

In Gelabert's case, the court found that she, unlike the plaintiff in Quint, "[p]rovided only generic evidence of her work restrictions, e.g., no intense typing or heavy lifting, without showing how these restrictions substantially limit her ability to work in the San Juan area given her education, training, skills, abilities, and employment history." Id.

## V. García's ADA claim

This Court finds, after applying the aforementioned legal standards, that García's case more closely resembles the situation faced by Gelabert than that of Quint. In this case, just like in Gelabert, Plaintiff is a highly skilled professional with an extensive work background, and she has failed to provide **any** credible and admissible evidence concerning the issue of her disqualification from a class of jobs or a broad range of jobs in various classes.

First, the Court evaluates the extent of Plaintiff's particular health conditions. In this Court's prior Opinion and Order, the following were determined as uncontroverted facts in relation to Plaintiff's claimed impairments:

(1.)     Plaintiff Gloria García was an employee of Frito Lay from August 24, 1989 until June 28, 1996.

(2.)     On June 1991, García was diagnosed with various gynecological-genital conditions. One of these conditions required chemotherapy.

(3.)     In addition, Plaintiff also suffered physical and emotional side effects as a result of the extremely abrasive drugs used for her medical treatment and as a result of various major surgeries. See Docket # 89, Plaintiff's Exhibit # 9, Dr. Jesús Rodríguez-Arroyo's Deposition.

(4.)     Due to Plaintiff's need for medical treatment, Frito Lay agreed to arrange Plaintiff's working schedule to allow her one day off each working week. This arrangement lasted approximately six months, from February, 1992 to August, 1992. Thereafter,

from August, 1992 to August, 1995, Plaintiff worked nine out of ten working days every two-week period.

(5.)     On November, 1994, Ms. García was hospitalized and underwent major exploratory surgery and, on March 7, 1996, she was again hospitalized for a total abdominal hysterectomy and bilateral salpingoophorectomy, with extensive enterolysis and adhesiolysis.

(6.)     For this surgery, Ms. García took a leave of absence. Up until May 6, 1996, Ms. García's treating physician, Dr. Jesús Rodríguez-Arroyo, had not released her to return to work. Plaintiff's physician estimated that she would need an additional 6 to 8 weeks of recovery after that date before she would be in a condition to return to work. Docket # 89, Plaintiff's Exhibit # 20, Letter by Dr. Jesús Rodríguez-Arroyo to Frito Lay.

(7.)     On June 28, 1996, Ms. García's attorney notified Frito Lay that she would not return to work and she claimed that she was constructively discharged. Docket #65, Defendant's Exhibit Q.

Although the Defendant argues that there is no evidence in the record that García has, or had, a physical impairment, the Court believes that the evidence provided by the Plaintiff

Civil No. 97-1313(SEC)                                                                              15

and referenced above suffices to establish that she had various genito-urinary conditions that may qualify as a physical impairment under the Act.[3]

However, that is not the end of the inquiry. The Court must also assess whether García's genito-urinary impairments substantially limited her ability to perform a broad range (or class) of jobs; and it is on this issue where the Court must depart from its previous ruling. In the first Opinion, the Court, relying on Quint, accepted without more, Plaintiffs' legal conclusion that the side-effects of her condition translated across a broad range of jobs and were not job specific. Docket # 89 at 54, citing Quint.

In light of Lebrón and Gelabert, both cases very clear on this point, the Court is compelled to carry out a careful analysis, which yields the conclusion that Plaintiff cannot prevail on her ADA claim. First, the Court focuses on Plaintiff's specific characteristics and skills, including her "education level, training, job skills, expertise, . . . knowledge" and employment history. Gelabert, 252 F.3d at 59. In this area, Plaintiff's background belies her claim of disability. Just like the plaintiff in Gelabert, García's education and experience qualify her for a number of jobs within a reasonable geographic area. In fact, García, who has both a bachelor's degree and a Masters in Business Administration, is even more educated than Ms. Gelabert. Additionally, García has an extensive work history that includes

---

[3] A "physical or mental impairment" for purposes of the ADA has been defined to include: "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory..., cardiovascular, reproductive, digestive, **genito-urinary**, hemic and lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1).

AO 72A
(Rev.8/82)

at least sixteen years of experience in business, finance, and human resources in several

major corporations such as the Housing Bank of Puerto Rico, First Service Corporation,

Ernst & Whinney, General Foods Corp., ITT Intermedia, and Frito-Lay.  Docket # 143,

Defendant's Statement of Material Facts at ¶¶ 1-2.  Also, García testified that while at Frito-

Lay she worked as a Financial Analyst, Planning Manager, Senior Financial Analyst, Senior

Compensation Analyst, and Compensation and Benefits Manager.  Id. at ¶ 3.

Thus, García's education, training and experience clearly suggest that there are

numerous positions in the local economy that she could attain.  In fact, García currently

works for her sister part-time performing accounting work, and there is nothing in the record

to suggest that she could not perform this work full-time.  Moreover, Plaintiff herself testified

in her deposition that there was "no special reason" why she was working part-time.  Id. at

¶11.  Plaintiff's doctor had in fact released her to work without restrictions after her surgery

in 1996.  Id. at ¶ 9.

Moving on to the second area of focus, the Court is required to look at the relevant job

market.  In other words, a court should consider: the job the plaintiff held at the time of the

impairment, the jobs considered "closed" to the plaintiff, and the available positions within

a reasonable geographic area. Gelabert, 252 F.3d at 59.  "The individualized characteristics

of the plaintiff are the bedrock on which this jobs analysis must take place." Id.  In this area,

Plaintiff bears the burden of proof. Lebrón, 251 F.3d at 240 ("[plaintiff] is required to

demonstrate that her back injury has precluded her from a substantial class of jobs or a broad

range of jobs."). In fact, in Lebrón, the First Circuit confirmed a grant of summary judgment

for the employer without a lengthy analysis, on grounds that:

> Lebrón's failure to proffer any evidence specifying the kinds of jobs that her
> back condition prevented her from performing dooms her ADA claim. . . .
> Without some evidence as to the kinds of jobs from which she is disqualified,
> a jury would not be able to perform the careful analysis that is necessary to
> determine that [plaintiff] was substantially limited in her ability to work.

Id. at 241 (internal citations and quotation marks omitted).

The Court in this case is faced with the same situation the First Circuit encountered

in the Lebrón case. In the case at bar, Plaintiff has presented a claim of disability to work,

but she has failed to provide any proof whatsoever regarding her inability to perform a class

of jobs or a broad range of jobs. Based on her educational and professional background, and

her particular health conditions, García's disability to work is not self evident, thus Plaintiff

was required to present credible evidence on this issue. Gelabert, 252 F.3d at 60-61. Since

García has failed to meet this burden, the conclusion must be drawn that "no juror could

reasonably find that [García] was so precluded by her impairment from a class of jobs or a

broad range of jobs in various classes as to be substantially limited in the major life activity

of working." Lebrón, 251 F.3d at 241. Accordingly, her ADA claim must fail and

Defendant's motion for summary judgment is hereby **GRANTED**.

### VI. Plaintiffs' Supplemental Claims

As to the pending pendent jurisdiction claims in the present case, it is hornbook law

that a district court has discretion to exercise supplemental jurisdiction over the state law

Civil No. 97-1313(SEC)                                                                  18

claims where the state and federal claims derive from a common nucleus of operative facts.
See 28 U.S.C. §1367; United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).
Nevertheless, where, as here, all federal claims warrant dismissal prior to trial, the district
court should decline to exercise supplemental jurisdiction.

It has been stated that the holding in Gibbs "seems to clearly require dismissal without
action on the merits and without any exercise of discretion if all the federal claims ... are
found to be short of trial, deficient." Snowden v. Millinocket Regional Hosp., 727 F. Supp.
701, 709 (D. Me. 1990). Such a result is warranted in view that "[t]he power of a federal
court to hear and to determine state-law claims in non-diversity cases depends upon the
presence of at least one 'substantial' federal claim in the law suit." Newman v. Burgin, 930
F.2d 955, 963 (1st Cir. 1991).

Although District Courts are not obliged to dismiss pendent state law claims, in the
usual case in which all federal law claims are dismissed before trial, the balance of factors
to be considered under the pendent jurisdiction doctrine–judicial economy, convenience,
fairness and comity–will point toward declining to exercise jurisdiction over the remaining
state law claims. In such a case, state-law claims should be dismissed. Carnegie-Mellon
University v. Cohill, 484 U.S. 343, 350 n.5 (1988); citing Gibbs, 383 U.S. at 726-27; see also
Mercado-Garcia v. Ponce Federal Bank, 979 F.2d 890, 896 (1st Cir. 1992); Rivera v.
Murphy, 979 F.2d 259, 264 (1st Cir. 1992); Figueroa Ruiz v. Alegria, 896 F.2d 646 (1st Cir.
1990); cf. Vega v. Kodak Caribbean, 3 F.3d 476, 478 (1st Cir. 1993) (holding that "when the

Civil No. 97-1313(SEC)                                                                    19

district court disposed of the ADEA claims, the pendent claims became subject to dismissal

for want of subject matter jurisdiction"); <u>Feinstein</u> v. <u>Resolution Trust Corp.</u>, 942 F.2d 34,

47 (1st Cir. 1991) (stating that "since federal question jurisdiction hinged on that [dismissed]

count, and there was no complete diversity of citizenship or other cognizable basis for the

assertion of subject matter jurisdiction in the district court, the pendent state law claims were

properly dismissed under the rule of <u>United Mine Workers</u> v. <u>Gibbs</u>").

     Supplemental jurisdiction should be declined in this case in view that the state law

claims substantially predominate over the federal claims. The Supreme Court has held that

judicial economy, convenience, fairness and comity favors "a decision to relinquish

jurisdiction when state issues predominate, whether in terms of proof, of the scope of the

issues raised, or the comprehensiveness of the remedy sought." <u>Carnegie-Mellon</u>, 484 U.S.

at 350 n.5, citing <u>Gibbs</u>, 383 U.S. at 726. Since Plaintiffs are not entitled to any award under

the ADA, the only award Plaintiffs could, in any event, pursue would be under the

commonwealth statutes. Therefore, Plaintiffs' claims under the laws and the Constitution of

the Commonwealth of Puerto Rico are **DISMISSED WITHOUT PREJUDICE.**

**Judgment will be entered accordingly.**

     **SO ORDERED.**

     In San Juan, Puerto Rico, this _28th_ day of December, 2001.

           SALVADOR E. CASELLAS
           United States District Judge